## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

MARK A. CATY,
    Plaintiff,

v.

DETROIT MHS, LLC, a Delaware limited liability company, d/b/a Marriott Hotel Renaissance Center,
    Defendant.

CASE NO.

HON.

---

MICHELLE C. HARRELL (P48768)
Maddin, Hauser, Roth & Heller, P.C.
Attorney for Plaintiff
28400 Northwestern Highway, 2nd Fl.
Southfield, MI 48034
(248) 354-4030
mharrell@maddinhauser.com

Joseph X. Michaels (P79084)
NACHTLAW, P.C.
Co-Counsel for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, MI 48104
(734) 663-7550
jmichaels@nachtlaw.com

---

## **COMPLAINT AND JURY DEMAND**

Plaintiff, MARK A. CATY, through his counsel, and for his Complaint states:

### **Parties, Jurisdiction and Venue**

1. Plaintiff is an individual residing in Macomb County, Michigan and who, during all relevant times, conducted business and worked in Wayne County, Michigan.

03215916 v1

2. Defendant, DETROIT MHS, LLC, is a Delaware limited liability company registered to do business in Michigan that conducts business in Wayne County, Michigan as the Marriott Renaissance Center Hotel.

3. Plaintiff seeks damages, exclusive of costs, attorney fees and interest.

4. This suit is authorized and instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, the Persons with Disabilities Civil Rights Act, M.C.L. §37.101, *et seq.*, and Michigan common law.

5. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e(5)(f); 28 U.S.C. § 1331 and 28 U.S.C. §1343 (a)(4).

6. Jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367 as they arise from the same case and controversy.

7. Venue is proper in this Court under 28 U.S.C. § 1391 as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

8. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and brings this action within ninety (90) days of the receipt of a "Notice of Right to Sue" issued by the EEOC on November 4, 2019.

### General Factual Allegations

9. Plaintiff was hired by Defendant on June 12, 1984 and for more than 35 years worked successfully as a maintenance person at Defendant's hotel.

10. Plaintiff repeatedly obtained good to very favorable performance reviews and several performance-based awards over his 35-year career with Defendant.

11. During his employment with Defendant, Plaintiff had an excellent attendance record and received a good service award and a large screen TV for his good work.

12. Throughout the duration of his employment, Plaintiff has had a disability that impacts his ability to properly and correctly interact with others and to process information.

13. Plaintiff obtained his employment with Defendant through Michigan Rehabilitation Services which provided him with job search and related supports due to his disability from which he had been in special education through his school years.

14. Plaintiff has been determined to be functionally disabled by an expert retained by the U. S. Social Security Administration.

15. As part of his daily routine, Plaintiff would gather his cleaning supplies and his bucket/barrel to complete his daily tasks at the hotel. For 35 years, Plaintiff would engage in the same process without any incident.

16. On July 19, 2019, Defendant suspended Plaintiff despite his 35-year career based on a single workplace dispute.

17. As part of his disability, Plaintiff often talks to himself throughout the day about his various tasks and his emotions.

18. On July 19, 2019, Plaintiff made a single off-hand comment about harming the person who had taken his workplace bucket/barrel without his knowledge.

19. The comment was made to himself, and given his disability, no reasonable observer could find the comment threatening and/or violent.

20. After the individual who had taken his supplies overheard the comment, she angrily confronted Plaintiff using profanity.

21. Defendant did not discipline that employee for her behavior and use of profanity.

22. The employee then reported it to Defendant's management, after which time Defendant suspended Plaintiff pending termination and had security walk him out of the hotel to his extreme humiliation.

23. On July 26, 2019, Defendant's management advised Plaintiff that he was terminated, effective as of July 19, 2019.

24. The real reason for Defendant's termination of Plaintiff was Plaintiff's disability, and Defendant's use of insidious stereotypes regarding individuals with mental disabilities such as Plaintiff.

25. Upon information and belief, other non-disabled employees of Defendant have engaged in similar altercations with their co-workers and not been summarily terminated.

26. Plaintiff could not understand why he was being treated in this manner as he had never been violent and had been an exemplary employee for 35 years, and the Union representative agreed to contact the Defendant again to see if they would have an in-person meeting.

27. After his termination, Plaintiff learned through his Union Representative that Defendant refused an in-person meeting at the hotel because General Motors Company and/or General Motors, LLC ("GM"), the owner of the Renaissance Center, would not allow Plaintiff on the building premises.

28. Plaintiff was confused about why GM would have become involved in Plaintiff's employment and Grievance and Plaintiff called the Union representative back to ask why.

29. The Union representative informed Plaintiff that "someone at the hotel called GM and told them that you threatened to shoot up the place" and, as a result, GM informed the hotel that GM was barring Plaintiff from the property.

30. At no time whatsoever did Plaintiff ever "threaten to shoot up" any place, and any statement of such nature was false and untrue, as reflected by his personnel file.

31. The statements made by Defendant and/or its agents were false, defamatory, and injurious to Plaintiff's reputation and standing in the community.

32. As part of his disability, Plaintiff requires routine, stability and a daily purpose and his termination has upended his condition and life circumstances, causing his significant emotional distress.

33. After 35 years of such exemplary service for Defendant and working for Defendant since June 12, 1984, Defendant summarily and wrongfully terminated Plaintiff for conduct that results from his disability and now he is left without gainful employment or a purpose for daily life.

34. Following his termination, Plaintiff filed a timely claim with the U.S. Equal Employment Opportunity Commission ("EEOC").

35. On November 4, 2019, the EEOC issued its Notice of Dismissal and Notice of Rights thereby enabling and authorizing Plaintiff to file this case.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. §12101, ET SEQ.

36. Plaintiff incorporates all previous allegations as if fully restated herein.

37. At all relevant times, Defendant was a covered entity under the ADA as defined by 42 U.S.C. § 12111(2).

38. Plaintiff is an "employee" and Defendant is an "employer" within the meaning of 42 U.S.C. §12111(4) and (5), respectively.

39. Plaintiff suffers from a "disability" and/or is regarded as having an impairment, as defined by 42 U.S.C. §12102.

40. Plaintiff is a "qualified individual" as defined by 42 U.S.C. §12111(8).

41. Defendant discriminated against Plaintiff, a qualified individual, on the basis of disability in regard to the terms and conditions of his employment, discipline and termination by (a) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability, and/or that perpetuate the discrimination of others who are subject to common administrative control and (b) by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee.

42. Defendant's decision to discriminate against and ultimately discharge Plaintiff was motivated in substantial part by Plaintiff's disability and/or Defendant's assumptions and unreasonable perceptions of Plaintiff's mental condition.

43. Defendant's actions in violation of the ADA were willful.

44. As a direct and proximate result of the aforementioned wrongful conduct of the Defendants, Plaintiff has suffered, is currently suffering, and will continue in the future to suffer damages, including without limitation:

  (a) Lost compensation, including wages and benefits;

  (b) Severe emotional distress, including fear, anxiety and depression;

  (c) Physical pain and suffering occasioned by the aforementioned emotional distress;

  (d) Loss of reputation;

  (e) Loss of dignity and self-esteem;

  (f) Loss of earning capacity; and

  (g) Other damages to be determined.

### COUNT II: VIOLATION OF PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### M.C.L. §37.1101 ET SEQ.

45. Plaintiff incorporates all previous allegations as if fully restated herein.

46. Plaintiff is a person with a disability and Defendant is a covered employer as defined by the Act.

47.     As shown by his 35 years of good service, Plaintiff was fully able to perform all of the duties of his job with Defendant.

48.     Plaintiff's disability is unrelated to his ability to perform the functions of his job with Defendant.

49.     Defendant discharged and/or otherwise discriminated against Plaintiff, an individual, with respect to the terms, conditions, or privileges of employment, because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position.

50.     Defendant's decision to discriminate against and ultimately discharge Plaintiff was motivated in substantial part by Plaintiff's disability and/or Defendant's assumptions and unreasonable perceptions of Plaintiff's mental condition.

51.     Defendant's actions in violation of the PWDCRA were willful.

52.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages.

## COUNT II: DEFAMATION

53.     Plaintiff incorporates all previous allegations as if fully restated herein.

54.     Upon information and belief, Defendant made a false and defamatory statement either verbally or by written or electronic communication concerning Plaintiff to GM that Plaintiff had threatened to "shoot up the place."

55.     Such statement by Defendant was false when made and Defendant knew such statement to have been false when made.

56.     Such false statement was made with malice, or Defendant made such statement negligently and without reasonable prudence.

57.     The statement constitutes defamation per se because such statement holds Plaintiff up to hatred, scorn, contempt or ridicule and/or was made with malicious intent, and imputes that Plaintiff committed a crime or impute mental impairment.

58.     Defendant's conduct violated M.C.L. §600.2911 and common law.

59.     Defendant's statement was not privileged.

60.     Such false statement was made with malice as there was no reason whatsoever for Defendant to contact GM regarding Plaintiff and such contact was made to harm Plaintiff and portray Plaintiff in a highly negative and false light.

61.     As a result of Defendant's conduct, Plaintiff suffered extreme humiliation, shock and upset from being identified as a person who would ever "shoot up" his place of employment or the property.

62.     Plaintiff sought a retraction in writing from Defendant, but such retraction was not provided.

## RELIEF REQUESTED

For all of the foregoing reasons, Plaintiff, demands judgment against Defendant as follows:

a. Compensatory damages for monetary and nonmonetary loss in whatever amount he is found to be entitled;

b. Exemplary and punitive damages in whatever amount he is found to be entitled;

c. A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

e. An injunction of this Court prohibiting any further acts of discrimination by Defendant;

f. An award of interest, costs and reasonable attorney fees; and

g. Whatever other equitable relief this Court find appropriate.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury of all claims and issues so triable.

    MADDIN, HAUSER, ROTH & HELLER, P.C.

    */s/ Michelle C. Harrell*
    Michelle C. Harrell (P48768)
    28400 Northwestern Hwy., Second Floor
    Southfield, MI 48034
    (248) 354-4030
    mharrell@maddinhauser.com
    *Attorneys for Plaintiff*

    */s/ Joseph X. Michaels*
    Joseph X. Michaels (P79084)
    NACHTLAW, P.C.
    Attorneys for Plaintiff
    101 N. Main St., Suite 555
    Ann Arbor, MI  48104
    (734) 663-7550
    jmichaels@nachtlaw.com

Dated: January 31, 2020